The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Cavanaugh presiding. First call 4-23-1251, the people of the State of Illinois v. Antwon Johnson. Counsel, would you please state your name for the record? Thomas Skelton. Brooks. First name Allison Page, last name Brooks. Thank you parties may proceed. Thank you good morning, Your Honors and may it please the court. My name is Tom Skelton from the Office of the State Appellate Defender and I represent the appellate in this case, Mr. Antwon Johnson. We raised four issues in this case. While I'm happy to answer any of the court's questions, I'd like to devote my time to the first and second issues, which discuss reasonable doubt and Antwon's right to self-representation. Turning to the first issue, Antwon was convicted of unlawful possession of a weapon by a felon after admitting during a traffic stop that a handgun in a lock glove compartment of the car was his. The state proceeded on a theory of constructive possession, which required the state to show that Antwon knew that the firearm was present and to exercise immediate and exclusive control over the area where the firearm was found. Good morning, counsel. Excuse me. Good morning. I do have a question regarding constructive possession. One of the elements the court looks at is proximity to the weapon. And in this case, you mentioned and we know that the gun was in the glove box next to the defendant. We do know the glove box apparently was locked, but was easily opened. Why is this not sufficient? I mean, does it matter that the glove box was locked, even though it could be easily opened? The officers just tugged on it a little harder than usual. So why isn't this important? I think it does matter that the glove box was locked and the officers both testified that the glove box was locked. It's important because it gets to the element of exclusive control. If the glove box is locked, then Antwon can't immediately access the gun. His control over it is dependent on the car's owner, who has the key and who can unlock it. Well, but it didn't need a key to open. I mean, I believe the record shows it did not need a key to open. The officers opened it by pulling on it. I mean, they pulled down hard, but they both testified that the glove box was locked. Well, but I mean, if it's easily open, why couldn't the defendant have easily access that gun? He admitted that he had a gun. I mean, that we didn't deny that he had a gun. Yes. Again, it just goes back to the element of exclusive control. If the area is locked, if he doesn't have access to it, then the element of exclusive control is distinct. The state has the burden to prove that Antwon had exclusive control. That's my point, counsel. I don't know that that is shown here when the glove box is easily opened. And I guess my question is, how do you respond to that? Why should we ignore that? I just don't think that the evidence in the record shows that the glove box was easily open, especially when both the officers testified in court that the glove box was locked. And doesn't the record also show that they testified that it was easily open when they opened it? I believe they said they pulled down hard on it, which doesn't seem, you know, that it's, if you have to pull down hard on something, if it's locked, it doesn't exactly seem to be easily opened. Okay. Thank you. Thanks. Counsel, if I may follow up, wasn't it also the defendant that acknowledged that the officer simply pulled down hard on the glove box and it opened? No, no. In his statements? Right. No, he briefly, you know, he briefly admitted, as the state even pointed out, it's a little hard to hear on the video that the gun was his. They also, you know, yeah, that's really what they're hanging their head on. And that's your best, the locked glove box is the best argument to demonstrate the lack of sufficient evidence. There's nothing else that you're combining with that. It's just the fact the glove box was locked, correct? Well, he doesn't own the car. You know, he was the passenger in the car. The record shows that. He doesn't have the key. The record shows that. You know, it's, it just gets to whether he has exclusive control over this area. And there just isn't, there isn't evidence in this record that he does. If you look, the only evidence that the state has here is his admission. And that isn't, you know, that the standard says exclusive control about ownership over the gun. Well, we know there were two guns here in this case, right? I mean, the driver indicated he had a gun, but he had, I believe, a fourth card and was permitted to carry a gun. Yes. Possess a gun, right. Yeah. Yeah. We cited to People vs. Wise, which is a similar case where, or similar circumstance where the officers pulled over, pulled over a car, the gun, in that case, within a cup holder in the back seat of a van, which was not, which, you know, the officer couldn't, or that, sorry, the, the driver didn't have immediate control over, over this gun, over the gun in Wise. And also similar to Wise, you know, the state didn't offer any fingerprint evidence or DNA testing to link Antoine to the gun in this case. They said that, you know, the only evidence is, his brief admission that the gun is his, but there's no other evidence demonstrating control over the area where the gun was found. There's no other questions. I turn to the second issue. So regarding the second issue, the, you know, the case law is clear that Antoine had a right to represent himself if he chose to do so. And that, you know, his technical legal knowledge or even his, his alleged grasp of the English language was not, was not a valid reason to deny Antoine his, his right to self-representation. And this court that's, in this case, that's exactly what the circuit court said, denying Antoine's request that he didn't, didn't understand the circuit court's admonishments and didn't understand the English language sufficient to, to represent himself. And the case law is just clear that those aren't valid grounds to deny somebody their right to represent themselves. What about counsel? Let me interject this idea that the court was thinking that the defendant was purposefully attempting to delay by, at this point, just before trial asking for the attorney, or to be, sorry, to go pro se, to do away with the attorney. How does that affect your argument? I just, I don't think that there's sufficient evidence here that, that, that there was a purposeful delay. You know, Antoine had some, some concerns with his attorney and in some motions that he thought should be filed. But there isn't any evidence of, sort of, gamemanship or, you know, that this was to, that this, that these were anything other than, than legitimate concerns or, or, you know, anything other than concerns that he genuinely held. I think if you look at some of the case law that, that goes into, to the gamemanship, you know, there's just much more evidence in those records that, that the defendant is not, not genuinely asserting their right of self-representation because they believe, they have a genuine belief that they would perform better representing themselves. But they're doing it for the purpose of delay. I just don't think that that's the case here. Well, it's a tough one on review as the court was there and witnessed the defendant's actions. I think it cuts both ways. This earlier concern about potentially going pro se, the court had had the conversations and admonishments with defendant and now it's coming up once again on the eve of trial. I think that's the key. So, you know, a little bit deferential, are we not, to the court who had to make this game time decision prior to trial? Yes, I, I mean, I understand the desire to be deferential, but if you go back before in the record, the circuit court seemed to be amenable to Antoine hiring private counsel, which would have resulted in delay. You know, private counsel would have needed some time to familiarize itself with the case and that didn't seem to bother the circuit court. And I think, you know, just looking at the case law too, there's just, there isn't a lot of evidence of gamesmanship in this case. Yeah, I would also, you know, Ron had mentioned that this was the eve of trial, but, sorry, you know, trial had not started, the circuit court was amendable to private counsel and to further delay. I don't think that sort of meaning that this is a case where meaningful proceedings had started. And again, it's just not what the circuit court said, if you just look at what the circuit court's reasons are, those just don't meet the standard for the right of self-representation. I think that's just clear from the case law. And that should be, you know, that's why I understand the deference to the circuit court. I think what the circuit court sat on the record should be, you know, way the heaviest and how we have a view into what the circuit court was thinking. Those are the reasons that it gave to the guy on the right. And, you know, it would be as much, yeah, that's what the circuit court said. Yeah, we should take that at face value. Counsel, turning to the issue of the question of whether the unlawful possession of a weapon by felon statute violates the second amendment, you, in your brief, argue and attempt to raise both a facial and as applied challenge. One of the questions I had is, why do you feel an as applied challenge would be appropriate here when we do not have any evidence of an evidentiary hearing that the court held on this issue? Any findings the court made? We need those, both of those things. Do we not to examine an as applied challenge? Well, I think that, you know, we have Antoine stipulated to his prior felony conviction before trial. So we know what the, this conviction, you know, the conviction that this conviction is on. I think that it's similar to the facts and people first Brooks where the, you know, the first district said that they had enough facts to analyze the as applied challenge. The state didn't, you know, they raised this issue, but they didn't point out anything specific that that this record is missing to evaluate the challenge. And I think given, you know, the stipulation and the PSI and the other evidence in the record, I don't think that there's anything missing from this record to evaluate the as applied constitutional claim. Okay. And I do have another question, obviously, if the panel does, I'm sure they'll jump in as well. But we have a precedent here in the fourth district with respect to this particular statute. And that is actually a case that I authored people versus Burns last May. And in Burns, we held that Bruin simply did not apply to the defendant, that the second and 14th amendments protect the right of quote law abiding citizens to possess handguns. And so that this historical tradition test applies only to those law abiding citizens. And so how do you get around Bruin? I'm sorry, Burns precedent that appears to be exactly on point with respect to this case before us today. Well, I would, I think that the Supreme Court's recent decision in Rahimi, you know, the plaintiff in Rahimi was, was, was not exactly what one would call a law abiding citizen. He, you know, he was harassing his, I believe, his ex girlfriend and engaging in these sort of road rage incidents. And the Supreme Court there, you know, said that the second amendment did apply to Mr. Rahimi, despite these, you know, this evidence in the record of not, not, not exactly law abiding behavior. You know, the court moved, you know, said the second amendment applies to him and moved on to the second step of the Bruin analysis. And I think that that's very strong precedent that, that, you know, the second amendment is a, it's a right that applies to everybody, not just to the law abiding, not, you know, not necessarily just a law abiding citizen. Well, Rahimi, now I could have not read it, both the facial and as applied challenges failed, right? Yes, but they failed on the second step. The court went on to say that there is sufficient historical tradition to justify disarming Rahimi, given the temporary nature of the disarmament in that case, and the particular threat that he posed to, you know, I assume to his ex girlfriend and other people that he was getting into these altercations with. Right, but there, the statute there was different, right, than the statute here. I didn't see any analysis in your brief with respect to even the historical tradition and the exceptions in Bruin that were mentioned, the reasons there for the regulation, those would be different, given the domestic violence statute that was at issue in Rahimi, right? I think I would just look at, you know, Rahimi came out, or the Supreme Court announced its Rahimi decision after, after we filed our opening brief, but we discuss it in the reply. And, you know, I think in Rahimi, he had a, you know, the statute basically disarmed him because he had an order of protection against him in, you know, in Texas, where he was living. Here, you know, I mean, you know, the record is clear that Antoine had this, had a conviction for aggravated fleeing. There is evidence that, you know, that they have posed a particular threat to any specific person. And the disarm, you know, he's, as the law is currently written now, he cannot own a handgun ever because of his conviction, or cannot possess a handgun. I think given, you know, given the court's analysis in Rahimi that it certainly doesn't, you know, they, they, I think they certainly highlighted the temporary nature of the disarmament in Rahimi and the particular threat, and those elements specifically are not found in this case. Counsel, if, if I may circle back to the as-applied challenge and discussing the Burns case once again, in that case, you know, similar to this, there was a stipulation with regards to the previous conviction, there was a pre-sentence investigation report. And I guess my question is going back to this, what really distinguishes this case from the precedent in Burns with regards to the as-applied challenge? I think the court, you know, the Supreme Court has further developed this test in Rahimi is what would distinguish it, just that we, you know, we've gotten more, more precedent from the Supreme Court, and that, that needs to apply to this case. Well, could you be more specific, please, about what aspect of Rahimi provides that additional guidance? Well, I, I think that, that the, you know, the Supreme Court said in the first, that the Supreme Court applied, said the Second Amendment applies to Rahimi despite, you know, despite the facts of the record and moved on to the second step of the Bruton analysis. Whereas in Burns, I understand that the, you know, this court rejected, rejected the defendant's argument based on finding that the Second Amendment didn't apply. I think my time's running short if there's any other questions. Okay. So, yeah, just for the, for those reasons and reasons, stay at our brief, we have to this court, either reverse Antoine's conviction or reverse an imprimand for a new trial or for another relief requested in the briefing. Thank you. Thank you, counsel. Ms. Brooks. Thank you, your honors. May it please the court and counsel. The, the element that has to be on or about his person and in the case they cite Wise, it was like in a third row seat, 10 feet away. So, that's one distinguishing element is here. It was, the proximity was close enough that he had immediate access to it because it was in a glove box right in front of his, where he was sitting in the front passenger seat. Also, another distinguishing element is that the Wise involved a, it had to be constructive possession, had to be proved through circumstantial evidence rather than a confession of possession. So, here we have the confession of possession, which distinguishes itself from Wise, which had no confession of possession. And so, the necessity of proving control over the area is a, is a means of proving circumstantially that a person constructively possessed something. So, here the defendant had it about his person in the, in the glove box in front of him and therefore can confess it, that it was his. So, that's sufficient to prove that he possessed it. So, it's not necessary to prove control over the area. So, the other element is the defendant's claims that the, the glove box was in fact locked. Well, the testimony from the officers that they deem it to be locked because it didn't open easily and they went looking for a key, for example. It ultimately was determined though that they were able to open it just simply by pulling it down somewhat hard. And so, therefore, as the prosecutor argued, the inference here is that it was in fact stuck, not locked. And therefore, the defendant's claim that he somehow didn't have immediate access to the, to the firearm in the, in the glove box for the reason it was locked is not actually borne out by the record because it was in fact opened simply by pulling it down. And with respect to the argument on self-representation, child court didn't actually get to this point, but under the Burton case, the defendant has forfeited his right to self-representation by waiting until immediately before trial. Here, there was a recess. He was going to, I think he said he had a lawyer, but he came back for recess and then asked to be, to go pro se in order to have the court hear motions. So, if a defendant waits until like the, you know, literally minute before jury selection is going to start and says he has a stack of motions, essentially, and he wants the court to hear while he goes pro se, that is the, essentially gets right exactly under that rule of Burton, that a request to go pro se right immediately ahead of trial is in fact untimely. And therefore, the defendant forfeited his right to self-representation. And the right is not absolute. It can be forfeited. Also, there's an additional factor here in the sense that the trial court found the defendant was sort of like unable to get through the admonition process by answering the court's questions and therefore deemed that he would be unable to exercise his right to self-representation because he couldn't even get through the colloquy of questions that the court had. So, for that additional reason, the defendant may not receive a new trial as a result of his claim that he was denied his right to self-representation. And with respect to the Second Amendment issue, it goes back to the Heller case, which had no doubt about the constitutionality of longstanding prohibitions on the possession of firearms by felons. And even the Rahimi case cites Heller and says that prohibitions on possession by felons are presumptively lawful. And so Rahimi was not presented as a felon. He was presented as somebody who had an order of protection. So, he just to say that the defendant who has a prior conviction is a law-abiding citizen is not correct because he is, in fact, a convicted felon. So, therefore, that's why he doesn't have a right to possess a firearm. Presumptively lawful prohibition under the Second Amendment. And there's no, if this argument is not preceded below and record made and rulings on which this can review, the claim of an as-applied challenge is not properly before the court. Well, but counsel argued, excuse me, counsel argued that there was the stipulation pre-trial report. Was there, I mean, what was missing for an as-applied challenge? How would you respond to counsel's argument? Well, the state never had an opportunity to make a further record below to introduce its own evidence if it wanted to specific to this issue. And then the trial court would have had an opportunity to make findings of fact that could be reviewed. So, that's why even if there are certain items that the defense believes would be enough to be reviewed on appeal, it's still like the state never had this opportunity because the state cannot introduce new evidence on appeal with respect to this issue. So, that's why the is still inadequate. So, the lack of findings itself, even if the record were adequate to review it, the lack of findings itself precludes the as-applied challenge. So, for these reasons, the state requests this court to affirm the defense conviction sentence. Thank you, your honors. Thank you. Mr. Skelton, rebuttal? Yeah, just a few points. Yeah, I just think that the record is clear that the officers both testified that the court box was locked and that this notion that it was that they needed to hold down hard just further demonstrates the lack of immediate control over the area. Sorry. I'm responding to the state's argument that Mr. Johnson forfeited his right to self-representation by waiting too late. I think, you know, that's just not shown by the record that that was what the circuit court was thinking in denying his request. Counsel, if I may, does the record bear out that there were at least what appear to be some pauses where the court suggested the defendant needed to answer or respond to certain questions? Yes, yes, I think so. We don't know how long those pauses were. We don't have the benefit. The trial court, though, was there. So that does appear to be in the record. And it also appears that at a prior court appearance, he suggested he was hiring private counsel. But then on the day of trial, private counsel does not appear, correct? Yes, yes, that's true. And after they go through quite a bit of what I will call the preliminary matters right before they start the trial, it's at that point, because those motions have not been filed, that he makes the request to go pro se right before trial begins, correct? Yes, but I, you know, I don't think that there's evidence that this was motivated by gamesmanship. And, you know, I don't know how the interaction, you know, you can't tell reading the record how the interaction with the court went. But I would note that the court's admonishments went beyond the admonishments under Rule 401. And, you know, the mere fact that somebody doesn't immediately grasp what the trial court was saying doesn't necessarily show sort of a lack of understanding of English or, you know, sufficient or any, you know, any grounds to deny his constitutional right of self-representation. But when this court reviews the trial court's ruling to deny the defendant's request to represent himself, we have to determine that the trial court's decision was arbitrary, fanciful, or unreasonable, and no reasonable person would take the view adopted by the trial court. So, what is the best evidence in the record that you have before us that the court's decision was arbitrary or unreasonable or that no reasonable person would take that view? I think the best evidence is what exactly the trial court said on page 79 to 80 of the record, that he's denying the request because he doesn't think Antoine has technical legal knowledge and doesn't think he understands the English language well enough. The case law is just clear that those aren't valid grounds to deny the request. Thank you. Yeah, my last point is just I don't think the states offered any specific evidence that they'd like to, that regarding the Bruin analysis, I don't think the states offered specific analysis. There are evidence that's not in the record that they think is crucial for this analysis of the constitutional issue. So, again, I think that the record here is sufficiently developed to evaluate the classified challenge in addition to the official challenge. All right. Anything else, counsel? No. Well, thank you. Thank you both. The court will take this matter under advisement and now stands in recess.